IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KELLY JOE PORTER <br> No Permanent Address <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   CIVIL ACTION NO. <br> ) |

## COMPLAINT

COMES NOW, Plaintiff, Mr. Kelly Joe Porter ("Joe"), by and through the undersigned counsel, respectfully presents this civil action for money damages arising from the wrongful shooting of Precious, a dog, Plaintiff's companion animal.

### JURISDICTION AND VENUE

1. Defendant is liable for the wrongful, intentional, and reckless acts as well as its negligent acts or omissions that caused this death.

2. Joe exhausted his administrative remedies. Joe sent a Federal Tort Claims Letter to the Department of the Interior on or about May 2, 2007. The Department of the Interior denied Joe's claim on or about Nov. 1, 2007.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b).

4. Because the actions that caused the loss of Precious occurred in the District of Columbia, venue is proper in the District of Columbia. 28 U.S.C. 1391.

### FACTS COMMON TO ALL COUNTS

Upon information and belief, Plaintiff hereby sets forth the following factual allegations that give rise to this suit:

5.  Mr. Kelly Joe Porter a man without a permanent address but domiciled in Washington, D.C., brings this action as Plaintiff to recover for the loss of Precious, a dog, his companion animal.

6.  At all times relevant to this Complaint, the Defendant, the United States of America, employed Mark N. Asmussen and other unnamed individuals as law enforcement officers in the United States Park Police (USPP) service.

7.  Asmussen and the unnamed members of the USPP acted in the course and scope of their official duties at all times relevant to this Complaint.

8.  In the afternoon of September 11, 2006, as they had on numerous prior occasions, Joe and Precious were exercising, playing, and using the recreational facilities of Dupont Circle Park, a public park located in a densely populated area of Washington, D.C.

9.  As he had on numerous occasions, Joe watched Precious carefully and never let Precious wander very far.

10. At approximately 5:45 P.M., Joe stood on or about the sidewalk that borders Dupont Circle Park at or near the point where Connecticut Avenue intersects the park.

11. Precious was running playfully nearby, in the grassy area of the southeast section of the park, roughly within the park section outlined by Connecticut Avenue and Nineteenth Street. Initially, Precious was moving away from the center of the park, towards Joe. Then Precious turned and began moving towards the general direction of a tree located in the grassy section outlined by Massachusetts Avenue and Connecticut Avenue.

12. Initially, Asmussen was near the center of the park and not in Precious' path or near her. Indeed, Precious had not shown any interest in Asmussen.

13. Then, Asmussen drew his pistol and advanced towards Precious. As he did so, Asmussen began shouting.

14. Asmussen crouched down into a kneeling position. He aimed his pistol at Precious.

15. Although continuing in the general line she started before Asmussen moved towards her, Precious still had not shown any interest in him nor closed the 10 to 15 yard distance between her and Asmussen.

16. Regardless, and although the park and nearby streets were crowded with rush hour pedestrian and vehicle traffic, Asmussen shot Precious in her left shoulder.

17. At the time, Joe was some ten yards behind Precious and listening to the news on his headphones. He could not understand what Asmussen had shouted. Joe, however, could hear Asmussen's weapon discharge.

18. Precious staggered a few steps in the direction she had been running before collapsing on the ground, convulsing, and yelping in pain.

19. In shock, Joe asked Asmussen why he shot Precious. Joe was terrified and frightened. Joe feared Asmussen might harm him next.

20. Joe went to Precious, fell to the ground, and embraced her.

21. Although conscious, Precious struggled to breathe. She convulsed and twitched sharply. She bled heavily from her wound; her blood covered Joe quickly.

22. While Joe continued holding Precious in this manner, Asmussen stood over Joe with his weapon drawn as if ready for further use. Joe feared for his safety.

23. Precious continued to whimper, yelp, and shake. Joe cried. Joe felt helpless and saddened at seeing Precious senselessly shot – for no apparent reason. Joe comforted her as best he could.

24. Within minutes, a crowd gathered around Asmussen even though Asmussen still had not holstered his gun.

25. Members of the public asked Asmussen why he shot the dog. Although a crowd had gathered, Asmussen refused to respond.

26. Members of the public asked Asmussen to summon veterinary assistance for Precious. Asmussen called for police backup but refused to call for a veterinarian.

27. Police officers from both the USPP and Washington Metropolitan Police Departments arrived. They marked the area around Precious and Joe with police tape.

28. Over an approximately thirty minute period, Precious' breathing grew more and more labored. Precious received no veterinary assistance; she remained in visible pain.

29. Joe believed she was slipping away, hoped someone would arrive that could help her, and prayed her pain might subside.

30. Precious stopped breathing. Joe remained at her side, frustrated and paralyzed by grief and fear at Asmussen's irrational conduct.

31. As this was happening, a witness to the shooting attempted to secure veterinary assistance for Precious by calling the Dupont Veterinary Clinic on P Street. Dr. Margaret Hollis and her colleague, Dr. Holley Chew answered the call and came to the scene.

32. Although Dr. Hollis arrived wearing a white lab coat and toting veterinary equipment, the police refused to admit her into the cordoned area and told her to speak to different officers. After repeated requests, Dr. Hollis was allowed through the police tape.

33. Dr. Hollis examined Precious and found that Precious had expired, that the bullet entered Precious' throat, and that Precious likely died by suffocating on her own blood.

34. After attending to Precious, Dr. Hollis noticed that Joe was alone and obviously distraught. She tried without success to comfort him.

35. Throughout this time, the police continued expanding the cordoned area and aggressively worked to disperse the crowd. One officer warned Joe, "You don't want to start a riot."

36. Although the crowd dispersed, many who had witnessed the shooting stayed to give statements. The USPP refused some witnesses' requests to provide statements, even threatening one with arrest after he asked the police to summon veterinary assistance.

37. Although the USPP officers discouraged statements from people that questioned Asmussen's conduct, USPP officers actively sought statements from the few individuals that expressed support for Asmussen's decision to kill Precious.

38. Because USPP actively sought select statements, only a few, persistent individuals, who were shocked by Asmussen's conduct and its aftermath, eventually convinced the USPP to accept their statements.

39. The ordeal, however, led a number of other witnesses, shocked and outraged by the conduct of the USPP officers, to memorialize their observations on-line in blog and journal entries; in letters to political and community leaders requesting formal investigations; and in newspaper editorials about Asmussen's actions.

40. As with any other Monday evening rush hour, when Asmussen shot Precious, Dupont Circle Park and the surrounding area were crowded with numerous pedestrians and occupied vehicles.

41. When Asmussen shot her, Precious was playing in a manner consistent with normal and ordinary public use and enjoyment of the park.

42. Precious and Joe spent many days and nights in Dupont Circle Park before Asmussen shot and killed Precious. Indeed, Precious was known as a sweet and well-behaved companion to Joe. She loved people, enjoyed playing with other dogs, and was good around children.

43. Precious was not threatening to or in the act of killing, injuring, or molesting humans, livestock, or wildlife. Precious represented no threat at all; she was running playfully. Precious posed no danger.

44. At the time he shot her, neither Asmussen nor any other witness described any behavior by Precious that justified Asmussen's decision to advance towards Precious, shout at her, kneel down, take aim, and shoot Precious while she remained some 10 to 15 yards away.

45. Asmussen could have exercised some other non-lethal options. Asmussen's destruction of Precious did not serve any permissible purpose under any applicable law or regulation, was unreasonable, and violated USPP and Department of the Interior policies.

46. Asmussen placed Joe in fear of imminent bodily harm by causing Joe to fear that Asmussen might harm him. Joe's fear was acute and contributed to his emotional pain, suffering, and mental anguish as he watched Precious suffer and die.

47. The acts and omissions of Asmussen and other USPP officers constitute extreme and outrageous conduct offensive to community standards of civility and decency. Asmussen knew or should have known dogs routinely run off leash in Dupont Circle Park; knew or should have known Precious belonged to Joe; knew or should have known that a missed shot might hit Joe or someone else; knew or should have known that he had no basis for shooting Precious; knew or should have known that he had no basis for holding his firearm over Joe in a menacing manner; and either knew or should have known or was recklessly indifferent to the possibility that Joe would suffer emotional distress as a consequence.

48. Asmussen and other USPP officers intentionally or recklessly caused further emotional distress and mental anguish by, first, failing to summon a veterinarian, and second, by refusing to admit a veterinarian who appeared on the scene so that she could administer appropriate veterinary assistance.

49. Joe rescued Precious from starvation more than two years ago. She had been severely neglected and had recently delivered a litter. Joe obtained appropriate medical attention for her. Thereafter, Joe invested significant personal resources in nurturing, training, caring, and raising Precious to be his companion.

50. Precious was approximately five and a half years old and in good health when Asmussen shot her. Although she had no formal obedience training, Precious readily accepted direction. Precious answered to "sit"; "stay"; and "come." Precious would not run away. She played nicely with other dogs and loved being around people. Precious leaned into her handler, remained relaxed, and enjoyed being hugged.

51. As a result of Asmussen's conduct, Joe suffered and continues to suffer severe mental anguish and severe emotional distress. Watching Precious suffer and die, under the circumstances described above, was very painful for Joe. The physical and emotional effects of Precious's unwarranted destruction have persisted to the present. Joe has suffered from loss of appetite, loss of weight, pain, sleeplessness, depression, and paranoia. Precious was Joe's sole companion, his family, and a source of great comfort and emotional support. Her presence, protection, and companionship were invaluable to Joe.

52. Defendant, the United States of America, is liable for these losses.

## COUNT I

**Claim for Conversion Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674**

53. Joe incorporates all preceding factual allegations, as if fully rewritten here.

54. Asmussen intentionally and unlawfully exercised dominion over Precious by shooting and killing Precious.

55. Unnamed Park Police Officers, to the extent they may have thwarted veterinary assistance to Precious, intentionally and unlawfully exercised dominion over Precious by shooting and killing Precious.

56. This conduct completely destroyed Joe's rights in Precious.

57. Defendant, the United States of America, is liable.

58. In accordance with 28 U.S.C. § 2675(a), this claim was presented administratively to the Department of the Interior on May 2, 2007, which denied it on November 1, 2007.

## COUNT II

**Claim for Assault Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674**

59. Joe incorporates all preceding factual allegations, as if fully rewritten here.

60. The alleged intentional acts constitute assault by a law enforcement officer.

61. The alleged intentional acts placed Joe in fear of imminent bodily harm.

62. It was reasonable for Joe to fear such harm.

63. Asmussen acted unreasonably under the circumstances.

64. Defendant, the United States of America, is liable.

65. In accordance with 28 U.S.C. § 2675(a), this claim was presented administratively to the Department of the Interior on May 2, 2007, which denied it on November 1, 2007.

## COUNT III

**Claim for Intentional Infliction of Emotional Distress Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674**

66. Joe incorporates all preceding factual allegations, as if fully rewritten here.

67. Asmussen and other law enforcement officers acted intentionally or recklessly and in an extreme and outrageous manner for at least the following:

   (a) Asmussen unlawfully and unreasonably shot Precious;

   (b) Asmussen then stood over Joe with his weapon drawn and ready for additional violent and unlawful use;

   (c) Asmussen and other law enforcement officials prevented any medical or veterinary assistance from rendering aid to Precious; and

   (d) Asmussen and other law enforcement officials acted unprofessional and hostile towards nearby members of the public that tried to comfort Joe,

protect Joe or intervene between him and Asmussen, or make statements in support of Joe.

68. Asmussen and other law enforcement officers wrongful acts or omissions caused Joe severe emotional distress that is both serious and verifiable.

69. Joe's emotional distress resulted from and was caused by Asmussen and other law enforcement officers' wrongful acts or omissions.

70. Defendant, the United States of America, is liable.

71. In accordance with 28 U.S.C. § 2675(a), this claim was presented administratively to the Department of the Interior on May 2, 2007, which denied it on November 1, 2007.

## COUNT IV

**Claim for Negligence Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674**

72. Joe incorporates all preceding factual allegations, as if fully rewritten here.

73. Asmussen owed a duty of care to Joe and to the other members of the public in Dupont Circle Park at all times relevant to this Complaint.

74. Asmussen breached that duty.

75. Asmussen's unreasonable and negligent shooting of Precious fell far below the standard of care demanded of, and normally exercised by, officers making similar determinations. His negligent conduct included at least the following:

    (a) Failure to use reasonable care to avoid causing injury to Joe's property;

    (b) Unreasonable use of excessive force;

    (c) Failure to abide by law enforcement training;

    (d) Failure to abide by law enforcement regulations; and

    (e) Failure to render or secure medical attention for Joe.

76. Asmussen's breach proximately caused injuries to Joe.

77. Defendant, the United States of America, is liable.

78. In accordance with 28 U.S.C. § 2675(a), this claim was presented administratively to the Department of the Interior on May 2, 2007, which denied it on November 1, 2007.

## COUNT V

**Claim for Negligent Infliction of Emotional Distress Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674**

79. Joe incorporates all preceding factual allegations, as if fully rewritten here.

80. Joe was in the zone of danger created when Asmussen negligently shot and destroyed Precious.

81. Joe was in the zone of danger created when Asmussen negligently stood over Joe with his weapon drawn and ready for additional violent and unlawful use.

82. Joe was in the zone of danger created when Asmussen and other law enforcement officials negligently prevented any medical or veterinary assistance from rendering aid to Precious and acted hostile towards nearby members of the public.

83. Asmussen's negligence caused Joe to fear that his physical safety was imminently endangered.

84. Defendant, the United States of America, is responsible and liable.

85. In accordance with 28 U.S.C. § 2675(a), this claim was presented administratively to the Department of the Interior on May 2, 2007, which denied it on November 1, 2007.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby demands from Defendant, the United States of America, compensatory damages for loses resulting from the conduct comprising each count of this

Complaint, in such amounts as shall be established at the trial of this matter, and such other and further relief including but not limited to the following:

86. Damages and compensation for loss of property and mental anguish totaling not less than $20,000.

87. Post-judgment interest.

88. Litigation costs, including any expert witness fees as well as all reasonable attorney's fees. 28 U.S.C. § 2678.

89. Such other relief as this Court deems equitable, just and proper.

Dated: March 21, 2008                                     Respectfully submitted,

*Joseph W. Clark*
Joseph W. Clark (468782)
E-mail: jwclark@jonesday.com
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true copy of the forgoing Complaint was served on the persons or entities indicated below by placing a copy of thereof in the United States Mail, certified first class postage prepaid, addressed as follows:

Civil Process Clerk
United States Attorney's Office
District of Columbia
555 Fourth Street, N.W.
Washington, DC 20530

Michael B. Mukasey, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Mark N. Asmussen
United States Park Police
Department of the Interior
1100 Ohio Drive, S.W.
Washington, DC 20242


This the 21 day of March, 2008.


                                                By: *Joseph W. Clark*
                                                    Joseph W. Clark,
                                                    Attorney for Plaintiff

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Mr. Kelly Joe Porter

## DEFENDANTS
United States of America

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF District of Columbia
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT n/a
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Mr. Joseph W. Clark
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⊙ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⊙ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

⊙ **E. General Civil (Other)**     OR     ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☒ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

|  ○ G. *Habeas Corpus/ 2255*<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

● 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. §§ 1346(b); 2671-80. FTCA action for money damages arising from the wrongful shooting of Precious, a dog, Plaintiff's companion animal.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ Not less than $20,000   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE March 21, 2008   SIGNATURE OF ATTORNEY OF RECORD *Joseph W. Clark*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.